

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3223 | **DATE** | 11/21/2003 |
| **CASE TITLE** | Diggs vs. Dynegy, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Diggs has failed to point to evidence that any of the three circumstances outlined by the Seventh Circuit justifying the imposition of affiliate liability on Dynegy applies in this case. Because Diggs has pointed to no evidence that would create a genuine issue of material fact as to Dynegy's status as Diggs' employer, and because Diggs' federal claims depend on Dynegy being Diggs' employer, Dynegy is entitled to summary judgment on each of Diggs' federal claims. Dnyegy's motion for summary judgment (7-1) is granted. The status hearing set for 11/25/03 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 4 2003 | 11 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | deputy initials | |
| | Copy to judge/magistrate judge. | | 11/21/2003 | |
| GL courtroom deputy's initials | | | date mailed notice GL mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
NOV 2 4 2003

| | |
|---|---|
| RAYMOND J. DIGGS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 03 C 3223<br>) |
| DYNEGY, INC. | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff, Raymond Diggs ("Diggs") filed a four-count Complaint against Defendant, Dynegy, Inc. ("Dynegy"), alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FLMA"). Diggs also added claims for unpaid commissions. Dynegy moved for summary judgment on the basis that it was not Diggs' employer. For the reasons stated below, we grant Dynegy's motion for summary judgment.

### Standard of Review

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions,

1

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). Once the moving party has met this burden of production, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

### Local Rule 56.1

Local Rule 56.1 sets forth the requirements for supporting and opposing motions for summary judgment. In addition to its memorandum in support of its motion for summary judgment, the movant is required to submit a statement of undisputed material facts that it contends entitles it to judgment as a matter of law. The nonmovant must file a supporting memorandum of law, opposing affidavits or other materials referred to in Fed.R.Civ.P. 56(e), and submit a concise response that must contain, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials replied upon." L.R. 56.1(b)(3)(A). Moreover, the nonmoving party shall file its own statement of any additional facts that require the denial of summary judgment. L.R. 56.1(b)(3)(B). The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1990)). Diggs has violated Local Rule 56.1 by failing to respond to Dynegy's statement of undisputed facts submitted pursuant to Local Rule 56.1. The Rule is clear: by failing to properly respond to a movant's 56.1 statement, "all material facts set forth in the

2

statement required of the moving party will be deemed to be admitted..." L.R. 56.1(b)(3)(B); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D.Ill. 2000) ("Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted."). Accordingly, we "depart from our usual posture of construing all facts in favor of the non-moving party." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995). Instead, we accept as true all material facts properly set forth in Dynegy's 56.1 statement of material facts. *See id.*

Furthermore, Diggs did not submit a statement of additional facts opposing summary judgment. A statement of additional facts filed pursuant to Local Rule 56.1(b)(3)(B) "provides the only acceptable means of . . . presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (affirming district court's finding that additional facts set forth in the party's memorandum in opposition to summary judgment were not properly before the court and should not be considered). Therefore, by failing to file a 56.1 statement of additional facts, Diggs has lost his ability to bring additional facts before this court. *Id.* at 1313, 1316-17. As such, the following factual background is substantially culled from the defendant's statement of undisputed facts.

## Background

Dynegy is an Illinois corporation whose principal place of business is in Houston, Texas. Dynegy is an energy company with direct and indirect corporate subsidiaries engaged in the sale and distribution of electricity, natural gas, and liquid gas to wholesale and retail customers. Diggs began working for Extant, Inc., in 1999. Extant was an e-commerce company providing carrier transport, operations support systems and solutions to integrated communications providers. On September 29,

2000, Dynegy Acquisition Corporation, a subsidiary of Dynegy, acquired and merged with Extant. After the merger, Dynegy Global Connect, L.P. was formed as a Delaware limited partnership. The general partner was Dynegy Connect GP, Inc. Dynegy Global Communications, Inc. ("DGC"), Telstra Wholesale, Inc., and Mantiss Information Corp. were the limited partners. DGC employed the Extant employees who stayed on after the merger, including Diggs. DGC was a subsidiary of Dynegy and provided high-speed communications services to wholesale customers in the United States and abroad. DGC was a Delaware corporation with its principal places of operation in Aurora and Englewood, Colorado.

Diggs held the position of regional director of sales for DGC. As regional director, he was responsible for selling broadband services to customers throughout the United States. He worked out of an office located in Oakbrook, Illinois. Diggs was employed by DGC until February 4, 2002, when he was laid off as part of a reduction in force. On May 14, 2003, DGC was bought by 360networks Acquisition.

Diggs filed a charge of discrimination under the ADA and ADEA with the Equal Employment Opportunity Commission. Those charges were dismissed on February 14, 2003. Diggs then filed this suit against Dynegy on May 14, 2003. Diggs, who was fifty-one years old when he was laid off, alleges that he was terminated on the basis of his age in violation of the ADEA. He also alleges he was terminated on the basis of his disability, severe sleep apnea, in violation of the ADA.[1] Moreover, in his Complaint, Diggs also contends he was denied the necessary leave to seek treatment for his disability, in violation of the FLMA. Finally, Diggs alleges that at the time of his termination, he was owed sales commissions from various contracts on which he worked while

---

[1] Diggs also contends he requested reasonable accommodations for his sleep apnea and that request was denied. He claims he was subjected to constant harassment regarding his sleep apnea.

4

employed by DGC. Dynegy moved for summary judgment contending there is no genuine issue of material fact as to Dynegy's status as an "employer" of Diggs.

### Discussion

Dynegy contends it cannot be held liable for DGC's alleged improper acts because it never employed Diggs and all of Diggs' claims depend on his allegation of Dynegy being his employer. Diggs admits he was employed by DGC, a subsidiary of Dynegy. (Compl. ¶ 7). In *Papa v. Katy Industries, Inc.*, the Seventh Circuit acknowledged the general principle that an affiliate corporation forfeits its limited liability only if it acts to forfeit it; for instance, by "failing to comply with statutory conditions of corporate status, or misleading creditors of its affiliate, or configuring the corporate group to defeat statutory jurisdiction, or commanding the affiliate to violate the right of one of the affiliate's employees." 166 F.3d 937, 941 (7th Cir. 1999). The parties agree that *Papa* applies to this case, in that it governs the inquiry as to whether affiliated companies should be considered a single employer. *Id.* at 940-41.

In *Papa*, the Seventh Circuit set forth a test to determine whether an employer with too few employees to be covered by the ADA, Title VII, and ADEA should nonetheless be covered because it is part of an affiliated group of corporations who in the aggregate have the requisite number of employees. *Id.* at 938. The court identified three situations in which corporate entities that are affiliated should be considered a single employer: 1) where the conditions for piercing the corporate veil are present; 2) where an enterprise splits itself into a number of corporations, each with fewer than the statutory minimum number of employees in order to avoid liability under the discrimination laws; or 3) where the parent corporation took the specific action of which the employee of its subsidiary is complaining. *Id.* at 940-41. Though this test was formulated to apply in the small employer context, the Seventh Circuit has explained that "nothing in Papa limits its application" to

5

that context. *See Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001). The Seventh Circuit noted that "the principles governing affiliate liability should apply 'across the full range of American law' unless a particular statute provide[s] an alternative test." *Id.* (quoting *Papa*, 166 F.3d at 941).[2]

Diggs has not established that any of the theories of liability under *Papa* apply to Dynegy in this case. Diggs acknowledges that the traditional conditions necessary for piercing the corporate veil are not present in this case. (Pl. Mem. at 4).[3] Diggs also concedes that the second situation set forth in *Papa* is not present in this case because the parent corporation, Dynegy, did not form the subsidiary to avoid liability under discrimination laws. (Pl. Mem. at 4).[4]

In his memorandum in opposition to summary judgment, Diggs argues only the third situation applies to this case. (Pl. Mem. at 4.) He contends the relevant inquiry is whether the defendant "might have directed" Diggs' termination and that he raises a genuine issue of material fact as to that issue. In support of its motion for summary judgment, Dynegy counters that the decision to lay off Diggs was made by the DGC President of Sales and two DGC Vice Presidents of Sales. Dynegy was not involved in the decision to lay off Diggs and offered no input as to whether to lay him off. These facts remain undisputed. As discussed above, having failed to submit his

---

[2] The parties agree that the inquiry used in Papa should apply to each of Diggs' claims. (Pl. Mem. at 3; Def. Mem. at 7-8).

[3] The undisputed evidence demonstrates that from October 2000 (when Extant was acquired and merged with Dynegy Acquisition Corporation) until May 14, 2003 (when DGC was purchased by 360networks Acquisition), Dynegy and DGC had separate articles of incorporation and did not have the same directors or officers. They did have some officers that overlapped. Dynegy and DGC held separate officers' meetings and Board of Directors' meetings. Dynegy and DGC filed separate state tax returns and maintained independent accounting records. Dynegy did not represent to creditors that it was responsible for the obligations of DGC and they maintained separate bank accounts and lines of credit. They had separate headquarters and each had its own human resources department.

[4] In 2002, DGC had approximately 200 employees, more than the minimum number of employees required to be independently liable under any of the statutes at issue in this case.

Local Rule 56.1 response or additional statement of material facts, Diggs cannot point to additional facts he supplies in the analysis section of his memorandum or the exhibits he attached thereto to oppose defendant's motion for summary judgment. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *see also Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D.Ill. 2000) ("[S]upporting documents submitted with a motion that are not referred to in the statement of facts will be ignored"). As such, Diggs has not raised a genuine issue of material fact as to whether Dynegy might have directed Diggs' termination.

Assuming the facts provided in the analysis section of Diggs' memorandum and attached exhibits were properly before the court, they still do not raise a genuine issue of material fact as to whether Dynegy directed Diggs' termination. For instance, Diggs contends the evidence shows that it was Dynegy that decided to leave the telecommunications business and it alone made the decision to lay off employees. The only evidence he offers to support this contention is a letter from DGC's President and Director of Human Resources dated March 5, 2003, one month after Diggs was laid off. It states that Dynegy is "making strides toward exiting the telecommunications industry in the near future." (Pl. Exh. D.) The letter is a reminder of Diggs' responsibility to keep trade secrets confidential and contains no information about the February layoff, the decision-making process for layoffs, or Dynegy's role in directing layoffs. Even if Dynegy did direct the lay off, Diggs has not even suggested that Dynegy had any input into whether *Diggs* would be one of the employees selected for the layoff. In *Papa*, the Seventh Circuit explained that a plaintiff must establish that the parent company selected him for the layoff on some forbidden ground. *Papa*, 166 F.3d at 942. The parent company in *Papa* did order the subsidiary to curtail operations, which in turn led to layoffs, but the plaintiff had submitted no evidence that the parent company was responsible for him being selected for a layoff. *Id.* As a result, the court held that the plaintiff could not show that the parent

7

corporation directed the layoff of plaintiff. *Id.* Such is the case here. Moreover, Diggs has offered no evidence whatsoever that Dynegy or DGC selected him to be one of the employees laid off based on an impermissible ground.

In opposing Dynegy's motion for summary judgment, Diggs also points to his own affidavit in which he states that he worked for Dynegy, he was located in Dynegy corporate office space in Oakbrook, Illinois, was paid by Dynegy from Dynegy accounts with checks using the Dynegy logo, and was offered severance from the Dynegy, Inc. Severance Pay Plan after being terminated by Dynegy. (Pl. Aff. ¶¶ 1-4.) Diggs' conclusory statements that Dynegy employed and terminated him, unsupported by specific facts, are not sufficient to raise a genuine issue of material fact. *See, e.g., Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (noting that "[i]t is well-settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact"); *see also LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997) ("[T]he object of Rule 56(e) is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit). Similarly, it is unclear how Diggs could know that he was paid from Dynegy accounts. *See* Fed.R.Civ.P. 56(e) ("opposing affidavits shall be made on personal knowledge"); *see also Malec v. Sanford*, 191 F.R.D. 581, 584-85 (N.D.Ill. 2000) ([T]he portions of [plaintiff]'s affidavit in which he attests to facts he could not possibly know is improper.").[5]

---

[5] The remaining exhibits Diggs submitted (including: the DGC checks bearing the Dynegy logo; a severance plan entitled, "Dynegy, Inc. Severance Pay Plan, Agreement, and Release"; and a DGC pay stub that has the Dynegy headquarters address) are not sufficient to permit a reasonable inference that Dynegy directed the allegedly discriminatory termination or that Dynegy meets any of the other *Papa* situations. At most, it demonstrates that Dynegy and DGC had some integrated operations, which under *Papa*, is not enough to hold Dynegy liable for DGC's allegedly improper actions. *See Papa*, 166 F.3d at 939, 942-43 (refusing to impose affiliate liability on parent company where parent company administered subsidiary's pension plan, fixed the salaries of subsidiary's employees, funded the subsidiary, had authority to order the layoff, and where computer operations were integrated); *see also Mohr v. WCKG, Inc.*, No. 00-C1146, 2000 WL 1535991, at * 3 (N.D.Ill.

In sum, Diggs has failed to point to evidence that any of the three circumstances outlined by the Seventh Circuit justifying the imposition of affiliate liability on Dynegy applies in this case. Because Diggs has pointed to no evidence that would create a genuine issue of material fact as to Dynegy's status as Diggs' employer, and because Diggs' federal claims depend on Dynegy being Diggs' employer, Dynegy is entitled to summary judgment on each of Diggs' federal claims.[6]

**Conclusion**

For the foregoing reasons, Dynegy's motion for summary judgment is granted. It is so ordered.

MARVIN E. ASPEN
United States District Judge

11/21/03

---

Oct. 17, 2000) (refusing to impose liability on parent company where parent and subsidiary had overlapping officers and a letter was written on parent company's stationery).

[6] We also dismiss Diggs' remaining state law claim for lack of subject matter jurisdiction. In his complaint, Diggs includes a count for the payment of unpaid commissions. He asserts no jurisdictional basis for this count nor does he allege under what statute he brings this claim. In its motion for summary judgment, defendant presumes Diggs is claiming violations of the Illinois Wage Payment and Collections Act and that Diggs is asking the court to exercise supplemental jurisdiction under 28 U.S.C. § 1367. (Def. Mem. at 1 n.1, 8.) In his response memorandum, Diggs seems to acknowledge as much by arguing that Dynegy meets the criteria for "employer" under his federal claims "and the Illinois Wage Payment and Collection Act [820 Ill. Comp. Stat. Ann. 115/1-15 (West 1999)]." (Pl. Mem. at 3.) Diggs then proceeds to analyze his apparent state law claim under the *Papa* test. Because all the federal claims have been dismissed, however, we should refrain from resolving this apparent state law claim on the merits. *See* 28 U.S.C. § 1367(c)(3) ("[T]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction"); *see also Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits.").

9